ALCA CONSTRUCTION COMPANY, INC. *v.*
WATERBURY HOUSING AUTHORITY
(AC 17325)

Foti, Lavery and Shea, Js.

Argued February 25—officially released June 16, 1998

*Timothy S. Fisher*, with whom were *Frances Z. Calafiore* and, on the brief, *James N. Royster*, for the appellant (plaintiff).

*Charles F. Corcoran III*, with whom were *Naomi B. Graubard* and *Roxanne Sinclair*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff appeals from the judgment rendered by the trial court denying its application to compel arbitration and to appoint an arbitrator. The plaintiff claims that the trial court improperly concluded that (1) article 31 of the general conditions of the contract between the parties does not constitute an agreement to arbitrate and (2) the terms of a subsequent agreement were part of the contract between the parties and that agreement did not constitute an impermissible modification of the general conditions. We affirm the judgment of the trial court.

The material facts are not disputed. On April 22, 1993, the plaintiff, ALCA Construction Company, Inc., and the defendant, the housing authority for the city of Waterbury, entered into a construction contract that called for the renovation of six buildings in a Waterbury public housing project known as Berkley Heights. The defendant received funding for the project from the Federal Department of Housing and Urban Development (HUD) and agreed to abide by HUD rules and regulations. Pursuant to HUD regulations, local housing authorities that receive HUD funding are required to use certain contract forms contained in HUD's "procurement handbook," and cannot modify those forms without HUD's written approval. Form number 5370,

entitled "General Conditions of the Contract for Construction," is one of the forms that local housing authorities are required to use in accordance with HUD regulations.

On December 10, 1996, the plaintiff submitted a claim to the defendant pursuant to article 31 of the general conditions of the contract between the parties. On February 24, 1997, the plaintiff filed a demand for arbitration with the American Arbitration Association. On March 17, 1997, the defendant filed an answer and setoff to the plaintiff's demand. Two days later, on March 19, 1997, the defendant withdrew its answer and setoff, claiming that there was no agreement to arbitrate. On April 11, 1997, the plaintiff filed an application to compel arbitration and to appoint an arbitrator. On June 3, 1997, the trial court rendered judgment denying the plaintiff's application. The trial court concluded that the contract between the parties "cannot reasonably be read to mean that the parties entered into an agreement to arbitrate."[1]

I

As a preliminary matter, we must address the defendant's claim that this appeal is moot and that we therefore lack subject matter jurisdiction to hear the appeal. The defendant alleges that the plaintiff has filed a complaint in the Superior Court raising the identical claim that it seeks to arbitrate. The defendant argues that, by filing a complaint, the plaintiff has acted inconsistently with the arbitration right that it claims to possess and, therefore, has waived that right.

Mootness deprives this court of subject matter jurisdiction. See *First Trust National Assn.* v. *Hitt*, 36 Conn.

---

[1] In addition to arguing that the language of the contract constituted an agreement between the parties to submit their disputes to arbitration, the plaintiff also argued that because the defendant initially filed an answer and setoff, it waived its right to object to arbitration. The plaintiff did not pursue this claim on appeal.

App. 171, 174, 649 A.2d 798 (1994). "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). The test for determining mootness of an appeal is "whether there is any practical relief this court can grant the appellant." *Citicorp Mortgage, Inc.* v. *Hairston*, 34 Conn. App. 138, 139, 640 A.2d 146 (1994). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Citations omitted; internal quotation marks omitted.) *Gagnon* v. *Planning Commission*, 24 Conn. App. 413, 415–16, 588 A.2d 1385 (1991), aff'd, 222 Conn. 294, 608 A.2d 1181 (1992).

In the present case, the plaintiff filed both an application to compel arbitration and a complaint for damages based on the defendant's alleged breach of contract. General Statutes § 52-409 provides that "[i]f any action . . . is brought by any party to a written agreement to arbitrate, the court in which the action . . . is pending, upon being satisfied that any issue involved in the action . . . is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action . . . until an arbitration has been had in compliance with the agreement . . . ." Because the other action may be stayed upon an order compelling arbitration in this action, this court is capable of providing practical relief to the plaintiff. Furthermore, we have held that "[t]he rule permitting dismissal of an action because of a prior pending action does not apply when the two actions are for different purposes or ends, or where they involve different issues." *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App.

339, 347–48, 494 A.2d 606, cert. denied, 197 Conn. 806, 499 A.2d 57 (1985). Here, the other action seeks damages for the defendant's alleged breach of the parties' contract; this action seeks only an order compelling the defendant to arbitrate. See id., 348.

We conclude that the filing of a civil complaint for damages based on the defendant's alleged breach of the parties' contract does not deprive this court of subject matter jurisdiction to determine whether the defendant may be compelled to arbitrate the plaintiff's claim.

## II

The plaintiff makes two claims on appeal. First, that the trial court improperly concluded that article 31 of the general conditions of the contract between the parties does not constitute an agreement to submit to arbitration any disputes arising under the contract, and second, that the trial court improperly concluded that a subsequent agreement of the parties stating certain supplemental general conditions was part of the contract between the parties and did not constitute an impermissible modification of the general conditions.

"The authority for arbitration must be derived from the agreement of the parties . . . and the relevant provisions of applicable statutory directives." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 194, 680 A.2d 1243 (1996); see General Statutes § 52-408 et seq. "An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Emphasis in original; internal quotation marks omitted.) *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 489, 439 A.2d 416 (1981), quoting *Board of Education* v. *Frey*, 174 Conn. 578, 582, 392 A.2d 466 (1978). Whether there is a duty

to arbitrate and, if so, the scope of that duty, "depend upon the terms of the agreement between the parties to [the] contract." *W. J. Megin, Inc.* v. *State*, 181 Conn. 47, 51, 434 A.2d 306 (1980). Therefore, we must determine what arbitration provisions, if any, are contained in the contract.

Article 31 (e) of the general conditions of the contract between the parties provides: "The Contracting Officer's decision [on a claim by the contractor] shall be final unless the Contractor (1) appeals in writing to a higher level in the PHA/IHA in accordance with the PHA's/IHA's policy and procedures, (2) refers the appeal to an independent mediator or arbitrator, or (3) files suit in a court of competent jurisdiction. Such appeal must be made within (30 unless otherwise indicated) days after receipt of the Contracting Officer's decision."

After reviewing article 31, the trial court stated "that article 31 is merely a contract provision setting forth a series of potential or possible procedures which might be used in the resolution of disputes. . . . [I]t falls short of constituting an agreement to mediate or arbitrate. . . . [C]onspicuously lacking from the agreement is a provision clearly stating that all, or a portion of any, disagreements or disputes arising out of the contract or the breach thereof shall be submitted to arbitration." The trial court concluded that section (e) of article 31 is meaningless standing alone and that additional language is required to select one of the dispute resolution procedures set forth in that section. We do not agree.

The language contained in section (e) of article 31 is clear and unambiguous and does not require any supplemental language to effectuate its purpose. The parties clearly agreed, pursuant to section (e) of article 31, to give the contractor who is aggrieved by a decision

of the contracting officer the unilateral right to exercise one of three options. One of those options is to appeal to an independent mediator or arbitrator. The parties agreed, therefore, that the plaintiff could appeal to an independent arbitrator.

Our conclusion that article 31 of the general conditions of the contract between the parties constitutes an agreement to arbitrate does not end our review of the plaintiff's claim. The parties entered into a subsequent agreement entitled "Supplemental General Conditions." Article 31 of the supplemental general conditions provides:

"Forum Provision: Choice of Law, Consent to Jurisdiction and Venue

"This Contract shall be deemed to be executed in the City of Waterbury, State of Connecticut, regardless of the domicile of the Contractor, and shall be governed by and construed in accordance with the laws of the State of Connecticut.

"The parties agree that any and all claims asserted by or against the PHA arising under this Contract or related thereto shall be heard and determined either in the courts of the United States located in Connecticut ('Federal Courts') or in the courts of the State of Connecticut ('Connecticut State Courts') located in the County of New Haven, Connecticut. To affect this agreement and intent, the Contractor agrees:

"(a) If the PHA initiates any action against the Contractor in Federal Court or in Connecticut State Courts, service of process may be made on the Contractor either in person, wherever such Contractor may be found, or by registered mail addressed to the Contractor at its address as set forth in this Contract, or to such other address as the Contractor may provide to the PHA in writing; and

"(b) With respect to any action between the PHA and the Contractor in Connecticut State Courts, the Contractor hereby expressly waives and relinquishes any rights it might otherwise have (i) to move to dismiss on grounds of forum non conveniens, (ii) to remove to Federal Court; and (iii) to move for a change of venue to a Connecticut State Court outside New Haven County.

"(c) With respect to any action between the PHA and the Contractor in Federal Court located in Connecticut, the Contractor expressly waives and relinquishes any right it might otherwise have to move to transfer the action to a United States Court outside the State of Connecticut.

"(d) If the Contractor commences any action against the PHA in a court located other than in the City of Waterbury and State of Connecticut, upon request of the PHA, the Contractor shall either consent to a transfer of the action to a court of competent jurisdiction located in the City of Waterbury and State of Connecticut or, if the court where the action is initially brought will not or cannot transfer the action, the Contractor shall consent to dismiss such action without prejudice and may thereafter reinstitute the action in a court of competent jurisdiction in the City of Waterbury, Connecticut."

The trial court relied on this forum selection provision to conclude that the parties did not agree to submit their disputes to arbitration. In addition, the court determined that the supplemental general conditions merely supplement the general conditions and do not violate any HUD regulations.[2] We agree.

---

[2] The trial court also stated that "in any event, the supplemental general conditions are still enforceable as between the actual signatories to the contract . . . ."

"[P]arties are free to contract for whatever terms on which they may agree [and] . . . a court must enforce the contract as drafted by the parties . . . unless the contract is voidable on grounds such as mistake, fraud or unconscionability." (Internal quotation marks omitted.) *Gibson* v. *Capano*, 241 Conn. 725, 730–31, 699 A.2d 68 (1997). "Whether the parties to a contract intended to modify the contract is a question of fact." *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 762, 674 A.2d 1313 (1996). However, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994)." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). "When . . . the trial court draws conclusions of law, [the scope of our appellate] review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061 [now Practice Book (1998 Rev.) § 60-5]; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992).

In this case, the trial court's determination that the supplemental general conditions are part of the contract between the parties and do not constitute an impermissible modification of the general conditions was a conclusion of law. Our review leads us to agree with the trial court that the supplemental general conditions are part of the contract between the parties. When viewed in its entirety, the contract clearly expresses the agreement of the parties to supplement section (e) of

article 31 of the HUD general conditions by selecting one of the three dispute resolution procedures provided in that section.[3] The definitive language of the contract, therefore, expresses the parties' agreement to resolve their disputes in a court of law rather than by arbitration. In addition, we do not consider the supplemental general conditions to be an impermissible modification of the general conditions in violation of HUD regulations. Pursuant to the general conditions, the plaintiff had a unilateral right to select one of three options to appeal an adverse decision of the contracting officer. The plaintiff forfeited two of those options, however, by agreeing to supplement the general conditions. The supplemental agreement did not impermissibly modify the contract, but rather, supplemented its meaning by designating which of the three methods of dispute resolution, referenced in article 31 of the general conditions, would be employed by the parties in the event that a dispute should arise.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

SHEA, J., concurring in part and dissenting in part. I agree with part I of the majority opinion, which rejects the defendant's claim of mootness based on the plaintiff's pending suit in the Superior Court for breach of contract against the defendant. I also agree with the portion of part II stating that "[t]he parties clearly agreed, pursuant to section (e) of article 31 [of the general conditions], to give the contractor who is

---

[3] Article 4 of the document entitled "Form of Contract" was signed by the parties on April 22, 1993, and provides in relevant part that "[t]he contract shall consist of this instrument and the following component parts . . . Supplemental General Conditions . . . .

"In the event that any provision in any component part of this Contract conflicts with any provision in any other component part, the provision in the component part first enumerated in this Article 4 shall govern, except as otherwise specifically stated. . . ."

aggrieved by a decision of the contracting officer the unilateral right to exercise one of three options. One of those options is to appeal to an independent mediator or arbitrator. The parties agreed, therefore, that the plaintiff could appeal to an independent arbitrator."

I disagree, however, with the remainder of part II in which the choice of forum provision of article 31 of the supplemental general conditions is deemed to override the arbitration option created by article 31 of the general conditions, despite the provision in the HUD procurement manual prohibiting any modification of the general conditions without HUD approval. The defendant does not claim to have obtained any such approval. The majority opinion does not challenge the effectiveness of that provision, but maintains that elimination of the arbitration option granted by article 31 of the general conditions is not a modification thereof. Any substantial change in the legal rights of a party to a contract, including the procedural right to arbitrate a dispute, would constitute such a modification. Since the majority opinion construes article 31 of the general conditions to give the plaintiff three options for dispute resolution, it follows that restricting the plaintiff to a single choice, a lawsuit, as provided in article 31 of the supplemental conditions, constitutes a modification prohibited by the HUD procurement manual.

Even if there were no prohibition in the HUD procurement manual against modification of the general conditions without HUD approval, the conflict between the dispute resolution procedures set forth in the general conditions and those in the supplemental general conditions create an ambiguity. Ambiguities in contract documents are ordinarily construed against the party who drafted them, in this case the defendant. As the majority opinion recognizes, the law favors arbitration and that procedure must be followed "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute." *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 489, 439 A.2d 416 (1981).

The majority opinion, despite its conclusion that article 31 of the general conditions gave the plaintiff three options for dispute resolution, including arbitration, assumes that the plaintiff exercised the lawsuit option by executing the contract, which contained both the general and the supplemental general conditions. I do not understand how the same stroke of the pen in executing that contract can both create the option of arbitration and also nullify it long before any dispute arose that would occasion its exercise.

I would reverse the judgment.